TENNIE PORTER ET AL *v.* ARKANSAS WESTERN GAS CO. ET AL

5-5911                                          482 S.W. 2d 598

Opinion delivered July 3, 1972

*Ralph W. Robinson,* and *Harden, Jesson & Dawson,* for appellants.

*Daily, West, Core & Coffman, Ball, Gallman & Martin,* and *N. D. Edwards,* for appellee.

LYLE BROWN, Justice. This action was commenced by Arkansas Western Gas Company as a bill in interpleader following the successful completion of a gas well in Crawford County near the Arkansas River. All the landowners in the area were joined as defendants. The dispute as to ownership is primarily between the Cooks and the Humphreys, the riparian owners on the south or Sebastian County side of the river, and the appellants, who are the landowners on the north or Crawford County side. At the point in question the river forms, roughly, the shape of a horseshoe. From 1827 until 1961 the river moved northward, which action caused a considerable portion of the land on the north bank to be washed into the river. At the same time a sand bar of considerable size formed in the river between the north and south bank and it is that area which is in dispute in the case. The appellants on the north side contend that the formation was an island within their original boundaries, or that it was formed by avulsion. Appellees dispute that the area in litigation is an island, contending that it is a gravel bar. Appellees also contend that the area in the bend became non-navigable in 1962 when the United States Government constructed a cut-off from one side of the "horseshoe" to the other, that the old channel became non-navigable and title reverted to the riparian owners. The thalweg, or main thread of the flow of the river, was near the north bank which of course places the gravel bar on the south side of the thalweg.

The chancellor found in favor of appellees on all points and on appeal it is urged that the chancellor was in error in finding that the land in question was not formed as an island within the original boundaries of the appellants, or that the same was not formed by avulsion.

After hearing several witnesses, viewing numerous maps, and touring the area in question, the court made

extensive findings on the questions of avulsion and the nature of the land in dispute:

"The history of the Arkansas River and the area concerned is that it moved to the north from the period 1832 to September 1962, and at some times faster than at others. As the river moved to the north, it eroded the north bank, but did not do so by sudden avulsion, nor change channels by avulsion as was argued herein. In so moving to the north, the boundary between the counties moved with the channel of the Arkansas River, as this was the designated boundary between Crawford and Sebastian Counties in the area concerned. Therefore, as the river moved to the north, the boundary between the counties moved to the north as well. In addition, lands of the riparian owners to the north, or on the north side of the river which were eroded by its movement were erased by the river, and were, therefore, lost both actually and as to call and description.

"There were no islands, and no land formations as such, in the area concerned in September 1962 (the date of construction of the cut-off) . . .There was, however, a sand bar which was the principal formation in the area concerned and in controversy in the old river channel, and it is apparent that had it been allowed to continue to develop and form that it would have been an accretion to the south bank of the river in this area, following the pattern indicated by the maps, charts, and aerial photos. However, at this time, i.e. September 6, 1962, this principal sand bar had no permanent character, no permanent vegetation, no fast land, and was simply a part of the river bed, i.e., sand bar.

"At the moment of, or upon the closing of the old river channel and the opening of the new cut-off, the old river channel ceased to be navigable, as was intended; and thus the State lost its claim or title thereto; and title to the old river bed vested in the then riparian owners."

With reference to all the findings of facts detailed in the trial court's excellent opinion we find that they are not against the preponderance of the evidence. It is our duty to affirm unless we conclude that the chancellor's findings are against the preponderance of the evidence. *Simpson* v. *Martin,* 174 Ark. 956, 298 S.W. 861 (1927).

Likewise, we find the legal conclusions of the chancellor to be appropriate. With respect to the nature of the formation in dispute—whether an island or sand bar—the subject was treated in *Crow* v. *Johnston,* 209 Ark. 1053, 194 S.W. 2d 193 (1946):

> It may be said that to constitute an island in the river the same must be of a permanent character, not merely surrounded by water when the river is high, but permanently surrounded by a channel of the river, and not a sand bar, subject to overflow by the rise of the river and connected with the mainland when the river is low.

On the question of avulsion as opposed to accretion, there was ample evidence which meets the test laid down in *Yutterman* v. *Grier,* 112 Ark. 366, 166 S.W. 749 (1914):

> The only dispute is that some of the defendant's witnesses testified that the greater part, if not all, of the land was formed during the overflow of 1898, and that the change was perceptible, in that the caving on the east side was perceptible. Some of the witnesses testified that they saw or heard the bank caving in. This circumstance does not, we think, take the facts of the case out of the operation of the general rule applicable to lands formed by accretion.

> The term "avulsion", on the one hand, and "gradual and imperceptible accretion", on the other, are used by writers on alluvion to contradistinguish a sudden disruption of a piece of ground from one man's land to another's, which may be followed and identified, from that increment which slowly or rapidly results from floods, but which is utterly beyond the power of identification.

Likewise, the finding of the chancellor that title to the old, non-navigable river bed created by the cut-off,

vested in the riparian owners with the thalweg being the dividing line is supported by Ark. Stat. Anno. § 10-204-205 (Repl. 1956); *Parker* v. *Moore,* 222 Ark. 811, 262 S.W. 2d 891 (1953); *Gill* v. *Porter,* 248 Ark. 140, 450 S.W. 2d 306 (1970).

The judgment is in all respects affirmed.