### Bob R. SMITH *v.* CITATION MANUFACTURING COMPANY, INC.

79-85                                                 587 S.W. 2d 39

Opinion delivered October 1, 1979
(Division I)

---

*Ball & Mourtin,* for appellant.

*Rose, Nash, Williamson, Carroll, Clay & Giroir,* for appellee.

DARRELL HICKMAN, Justice. Bob R. Smith, the appellant, was elected as a vice-president by the Citation Manufacturing Company, Inc. in Januray, 1975. At the same time he was elected a director. He went on Citation's payroll about March the 1st. He was fired from his job as vice-president in June, after serving less than six months. Smith continued as a director until January, 1976.

Citation sued Smith in the Benton County Chancery Court for a breach of fiduciary duty and obtained judgment for $24,887.17. Smith was the sole stockholder of Equipment Sales & Service, a corporation to which Citation delivered some $65,000.00 in goods during 1975.

Smith appeals alleging essentially three errors. First, it is argued that because Citation had adequate knowledge of all Smith's activities and information regarding Smith's company, Smith did not breach his fiduciary duty to Citation. Second, the chancellor erred in refusing to admit a financial report prepared by an accountant. Finally, Smith argues the court erroneously determined damages.

Citation, an Arkansas corporation located in Siloam Springs, Arkansas, produces and distributes industrial cleaning equipment. Bob Smith had been a distributor of industrial cleaning equipment in California. He was introduced to Citation's Board of Directors as one of the largest distributors in the states. He was hired as vice-president of

operations and at the same time elected to Citation's Board of Directors. Elmer Heinrich, the president and chairman of the board, had known Bob Smith, both of them having been in the business for some time, and introduced Smith to the board.

From January, 1975, through June, Citation sold to Smith's California company some $65,000.00 worth of equipment.

Smith sold his company in California about June the 6th. It filed voluntary bankruptcy in October, 1975.

Citation claimed it was unable to collect all that was due for the sales to Smith's company and suffered damages totalling $30,688.88 — as a result of Smith's breach of his fiduciary duty.

The chancellor entered these specific findings and conclusions:      .   .   .

6. From January 27, 1975 through June 1, 1975 Bob Smith had knowledge that Smith Investments and Equipment Sales were having cash flow problems, problems with collecting accounts, problems meeting their obligations as they arose, and other financial problems all of which were not disclosed to Citation. Knowledge of such problems would have been material to Citation's decisions to extend credit and ship goods to Equipment Sales.

7. In June, 1975, Bob Smith received from Smith Investments two machines that Equipment Sales had purchased from Citation. Smith Investments had not paid Citation for the machines and Bob Smith knew this; he sold them for his own personal gain. . . .

2. Bob Smith, while serving as an officer and/or director of Citation, was negligent and breached his implied obligations and fiduciary duties as follows:

A. By failing to exercise ordinary diligence and good

faith in neglecting to provide Citation with the information he had concerning his company's probable inability to pay for goods purchased on credit from Citation.

B. By failing to warn Citation that his companies would likely be unable to pay for the equipment purchased on credit when diligence and good faith required such warning.

C. By transferring equipment from Smith Investments and Equipment Sales to himself for satisfaction of his own personal obligations, knowing that Citation had not been paid for such equipment.

D. By permitting Citation to advance credit to Smith Investments and Equipment Sales in amounts exceeding their ability to pay when he knew or should have known that these companies would not pay for the goods.

E. By failing to make full and complete disclosure to Citation of the financial condition and affairs of Smith Investments and Equipment Sales as he knew them to be.

3. As a result of Bob Smith's negligence and breaches of fiduciary duties, Citation has been damaged in the sum of $24,887.17 for which it should have judgment. . . .

On review it is our duty to affirm these findings unless we conclude they are clearly against the preponderance of the evidence. *Porter* v. *Ark. Western Gas,* 252 Ark. 958, 482 S.W. 2d 598 (1972).

There is no doubt Citation had information in its office that Smith's financial dealings were suspect. Smith had been in bankruptcy court before and a Dun & Bradstreet credit report on file with Citation reflected that fact. Citation knew Smith was trying to divest himself of the company. Two checks from Smith's company to Citation failed to clear the bank. Smith said he would take care of them.

Heinrich knew Smith owned the California company but denied he knew it was a corporation. Heinrich denied knowing of another corporation Smith owned called Smith Investments, of which Equipment Sales & Service was a division.

A critical shipment of equipment occurred in April, 1975. Heinrich wanted to ship $27,000.00 worth of equipment to Smith's company. Smith said that much could not be accepted. Heinrich offered 60 days' credit, the usual being 30 days. Smith accepted on his company's behalf. It is undisputed that Heinrich and Smith agreed that if the equipment could not be sold, it would be reshipped to other distributors or buyers.

Smith's main argument is that Citation knew all about his background and his ownership of the California corporation; further, that Citation knew, or should have known, about the California company's financial condition.

There is no doubt that Citation did not know Smith withdrew $6,500.00 for himself when Smith came to Arkansas to be employed by Citation. Smith's California manager testified that the account was overdrawn some $11,000.00 at about this time.

Smith did not tell Citation that he received two reports that the California company had an overdrawn bank account. A negative bank balance was a routine matter for the California company during 1975. Smith knew that shipments were made after he had this knowledge.

Smith's manager in California testified he told Smith they could not pay for the large April shipment on time. Smith testified he checked with California and decided they could accept the shipment under the terms offered. Smith did not tell Citation his company had to sell equipment at cost to get operating money.

Smith took several pieces of equipment from his company when he sold it, knowing that it owed an outstanding indebtedness to Citation.

It is not apparent from the record that Smith told Citation he had lost a valuable line of merchandise — the Hotsy line. His company had sales of over $800,000.00 in 1974, the year it handled the Hotsy line; sales dropped to about $100,-000.00 the first five months of 1975. Smith regularly checked with the California company and had access to its continuing financial condition.

Smith was both a director and officer of Citation.

We defined the fiduciary duty of a director in the case of *Sternberg* v. *Blaine,* 179 Ark. 448, 17 S.W. 2d 286 (1929) as follows:

> It may therefore be stated as the settled rule in this State that any failure of a director to exercise diligence or good faith which results in loss to a stockholder or creditor, entitles such stockholder or creditor to require the directors whose negligence have caused the loss to pay. In other words, the director whose negligence causes loss is liable for such loss to stockholders and creditors. *Id.* at 453.

We said in *Bank of Commerce* v. *Goolsby,* 129 Ark. 416, 196 S.W. 803 (1917):

> For all practical purposes they (directors) are trustees when called upon in equity to account for their official conduct.

There is an even greater duty on one who is both a director and an officer in a company. *Raines* v. *Toney,* 228 Ark. 1170, 313 S.W. 2d 802 (1958).

The evidence in this case clearly supports the chancellor's finding of a breach of the fiduciary relationship. There was testimony Citation did not fully know of the financial condition of Smith's company, and if they had, the goods would not have been shipped.

Smith tried to offer as evidence an unaudited financial statement prepared by an accountant. The chancellor

properly excluded it. It was not properly authenticated and no basis was laid for it being admitted as a business record, nor any exception defined in Rule 803 (6), Arkansas Rules of Evidence.

Smith argues the damages were excessive and Citation's own unclean hands and negligence contributed to them. No doubt Citation knew some of the problems of Smith and his company. But a full and complete disclosure was due Citation by Smith and he fell woefully short of that mark.

Smith argues Citation knew of the sale of his company in June and had it acted promptly could have reduced its damages by $15,000.00. Smith says there was this much inventory of Citation equipment in California when he sold the company. Smith also argues he and Citation agreed that if the machinery could not be sold it would be redistributed and that Citation wrongfully failed to abide by this agreement.

No doubt if Citation had known in June what it learned later greater efforts would have been made to collect the debt. What those efforts would have been and the results of such efforts can only be speculation. There is conflicting evidence on whether there was sufficient Citation machinery on hand in June to cover the debt—it was about $30,000.00 at this time. Smith had removed two of the machines himself, knowing Citation was owed a substantial sum of money by his company.

The record reflects that Citation made extensive efforts to collect the debt. As a result of extended negotiations with the new owners and with a bank, about $10,000.00 worth of equipment was recovered, for which Smith received a credit.

It is undisputed that Citation, retaining no title or right to control over the equipment, sold the equipment to Smith's company. There is no evidence the new owners were aware of any agreement between Citation and Smith to redistribute the machinery. In the written agreement Smith signed selling his company there is no mention of such a right — one Smith could have easily provided to protect his employer, Citation.

Consequently, there is no evidence Citation had any legal right to recover or reship the machinery. We cannot say the chancellor's finding denying Smith's claim for reduction of damages was clearly against the preponderance of the evidence.

Affirmed.

We agree. HARRIS, C.J and GEORGE ROSE SMITH and FOGLEMAN, JJ.