Dennis V. THURMAN and Edith Thurman
*v.* Richard Larry THURMAN; Curtis Thurman
and Charles DeWayne Thurman

CA 94-732                                        900 S.W.2d 221

Court of Appeals of Arkansas
Division I
Opinion delivered June 28, 1995
[Rehearing denied August 16, 1995.]

*Gibson & Hashem*, by: *Hani W. Hashem*, for appellants.

*Noel F. Bryant, P.A.*, for appellees.

JAMES R. COOPER, Judge. This is a chancery case arising out of a family settlement agreement. Cecil and Margie Thurman had 198 acres of real estate which they divided into four 40-acre tracts, leaving a 38-acre homestead. They sold the timber from two tracts, then deeded them to their sons, Curtis and Larry. Their

other sons, DeWayne and Dennis, received 40-acre tracts with the timber intact. Cecil was paid approximately $29,000 for the timber, and placed these proceeds in a joint account with Margie. Cecil died intestate, and all the property went to Margie by operation of law. Margie put her liquid assets, including $80,000 worth of certificates of deposit into POD accounts in which all four sons were beneficiaries. She made a will leaving the 38-acre homestead and personal property to be divided equally among all four sons. When Margie died the sons had several discussions which culminated in the family settlement agreement, the purpose of which was to rectify the inequality resulting from the sale of timber on tracts conveyed to Curtis and Larry. An agreement was executed by Curtis, Larry, DeWayne, and Dennis and the executed agreement was taken to an attorney to be put in legal form. After this was done, Dennis stated he had changed his mind and refused to sign the substituted draft. Curtis, Larry, and DeWayne sued to enforce the family settlement agreement. After trial, the chancellor found Item 6, relating to the 38-acre tract, to be vague and unenforceable, but found it to be severable and enforced the remainder of the agreement. From that decision, comes this appeal.

For reversal, the appellant contends that the trial court erred in finding that Item 6 was severable from the remainder of the family settlement agreement, and that the trial court erred in calculating the judgment amount. We find no error, and we affirm.

We first address the appellants' argument that Item 6 was not severable from the remainder of the family settlement agreement. Item 6 was titled "38 Acres and home site" and provided that:

> Land to be divided between Larry, Dewayne, Curtis, and Dennis Thurman. Dennis Thurman portion of land to be adjoining the land he already owns. Larry, Dewayne, and Curtis Thurman to reach an agreement on the location of their portion of the land after the survey is complete and Dennis' portion has been removed.

The remaining provisions, which were enforced, dealt with uncut timber on tracts deeded to DeWayne and Dennis; cut timber sold previously; the $80,000 certificate of deposit; various items of personal property; and the settlement of bills of the estate.

■■ The determination of severability depends on the intentions of the parties and is therefore an issue of fact; the chancellor's finding on this issue will be affirmed unless it is clearly against the preponderance of the evidence. *Ellison* v. *Tubb*, 295 Ark. 312, 749 S.W.2d 650 (1988). The *Ellison* Court quoted from 17 Am. Jur. 2d *Contracts* § 325 (1964) as follows:

> As a means of ascertaining the intention of the parties, various tests have been adopted. According to some authorities, the criterion is to be found in the question whether the quantity, service, or thing as a whole is of the essence of the contract. If it appears that it is to be performed only as a whole, the contract is entire. Thus, the best test is said to be whether all of the things, as a whole, are of the essence of the contract: that is, if it appears that the purpose is to take the whole or none, the contract is entire; otherwise, it is severable. Another test supported by a number of authorities is that a contract is entire when, by its terms, nature, and purpose, it contemplates that each and all of its parts are interdependent and common to one another and to the consideration, and is severable, when, in its nature and purpose, it is susceptible of divisions and apportionment, and has two or more parts in respect to matters or things contemplated and embraced by the contract which are not necessarily dependent upon each other.

*Ellison, supra*, 295 Ark. at 314.

■ We think that the chancellor was correct in finding Item 6 to be severable. It is clear that the 38-acre tract was of minor significance to the parties. The main purpose of the agreement was the equalization of shares in light of the removal of timber from the tracts deeded to Curtis and Larry, and Item 6 contained no provision forwarding the equalization of the brothers respective shares. Furthermore, the fact that they merely agreed to reach an agreement regarding the 38 acres later indicates that the parties did not consider this issue to be dependent upon the remaining issues agreed upon in the settlement agreement.

■■ Nor do we agree with the appellants' contention that there was no binding contract because there was no "meeting of the minds" between the parties. This argument is premised, in

part, upon the appellants' contention that Item 6 was an essential term of the agreement. We find no merit in this argument because, as we have noted, we think that Item 6 was not an essential term but was instead subordinate to these terms of the agreement designed to equalize the brothers' respective shares. Furthermore, a "meeting of the minds" does not depend upon the subjective understanding of the parties, but instead requires only objective manifestations of mutual assent for the formation of a contract. *Dziga* v. *Muradian Business Brokers, Inc.*, 28 Ark. App. 241, 773 S.W.2d 106 (1989). Although we agree that sending the agreement to an attorney to be put "in legal form" is a factor militating against a finding of intent to form a binding contract, it nevertheless appears from the record that the original agreement was in fact executed by all of the parties. Giving due deference to the chancellor's superior position to weigh the credibility of the witnesses, we cannot say that he clearly erred in finding that the parties mutually intended to enter into a binding contract. *See Ellison v. Tubb, supra.*

██ Finally, we address the appellants' contention that the chancellor erred in finding that the appellants should pay the estate the sum of $12,968.50, as shown in the notes attached to the agreement. The appellants assert that the contract was ambiguous in this respect and that the doctrine of *contra proferentum* should be applied so as to resolve the ambiguity against his brother, Larry Thurman, who drafted the agreement. We do not agree. Family settlement agreements are favorites of the law, and equity is anxious to encourage and enforce them. *Jones* v. *Balentine*, 44 Ark. App. 62, 866 S.W.2d 829 (1993). In the case at bar, the chancellor arrived at his decision regarding the judgment amount after hearing the testimony of the parties regarding their intentions. Under these circumstances, we decline to disturb the chancellor's findings by application of a rule of construction.

Affirmed.

ROBBINS and MAYFIELD, JJ., agree.