Charles LUNINGHAM *v.* ARKANSAS POULTRY
FEDERATION INSURANCE TRUST

CA 95-750                                          922 S.W.2d 1

Court of Appeals of Arkansas
Division I
Opinion delivered May 22, 1996

*John Harris*, for appellant.

*John T. Hardin*, for appellee.

JOHN MAUZY PITTMAN, Judge. Charles Luningham has appealed from the entry of summary judgment for appellee, Arkansas Poultry Federation Insurance Trust, in this action to recover medical benefits. We affirm in part and reverse and remand in part.

Appellant is a poultry grower and has been a member of the Arkansas Poultry Federation for many years; as a member, he has been able to participate in a group health benefit plan that the federation obtained from appellee. In 1994, appellant incurred medical bills totalling more than $50,000.00. Appellee paid more than $24,000.00 and denied the balance of appellant's claim. Appellant then sued appellee. He stated in his complaint that, although he did not have a copy of his benefit plan, he believed that his coverage was the same as that shown on a brochure labelled Exhibit "A" to appellant's complaint, which set forth the terms of appellee's Producer Option Health Plan. Appellant alleged in his complaint that, under the terms of that plan, appellee owed him $24,573.17.

In its answer, appellee denied that it owed appellant any money or that appellant had coverage under the Producer Option Health Plan. It admitted, however, that, "at various times, the [appellant] has been a member of the [appellee's] group plan." In appellee's answers to interrogatories, it stated that appellant had had various policies with appellee over the years and that the plan became self-funded in 1981. Appellee stated that, as shown in Exhibit "A" to the answers to interrogatories, Don Weeks, senior vice president of the plan's administrator, Fewell & Associates, Inc., sent a letter on July 26, 1991, to the insured poultry producers, including appellant, announcing changes in the plan's benefits. Appellant also attached as Exhibit "B" to the answers to the interrogatories the plan booklet reflecting the benefits as announced in the July 26, 1991, letter. Appellee stated that these items were furnished to appellant.

In Interrogatory No. 2, appellant asked the following: "What material changes, either in benefits or premiums, have been made to [appellant's] original policy with said [appellee]? Please attach

copies of each and every said material change made to [appellant's] policy or plan aforementioned." Appellee objected to this interrogatory and referred appellant to Exhibits "A" and "B." Appellee asserted that the changes noted in Exhibits "A" and "B" were in effect at the time of appellant's loss in 1994. Appellee also objected to appellant's request for copies of every notice sent to him about material changes in the plan. In its answers to interrogatories, appellee stressed that appellant was not covered by the Producer Option Health Plan and had never applied for coverage thereunder. In its answers to Interrogatories Nos. 12 and 13, appellee discussed why it had determined certain expenses to be ineligible for coverage.

On December 1, 1994, appellant moved for an order compelling appellee to answer Interrogatories Nos. 1, 2, 3, 4, 5, and 13. On December 13, 1994, Randy Coleman was relieved as counsel for appellee, and John Hardin was substituted as its counsel.

On April 4, 1995, appellee moved for summary judgment. Appellee argued that appellant was a participant in the 1981 Growers Health Benefit Plan and that, although he was notified that he could apply for coverage under the Producer Option Health Plan, he had never applied for benefits thereunder. Appellee further argued that appellant's claims in the complaint were not covered by the 1981 plan. In support, appellee attached the affidavit of Randy Coleman, who stated that, since January 1, 1981, appellant has been a participant under the 1981 Growers Health Benefit Plan, which has been modified from time to time. He also stated that this plan is between the Arkansas Poultry Federation as sponsor and appellee as provider and that appellee and the federation have agreed to changes in the terms of the plan; as a participant, appellant was subject to these modifications. He stated that appellant never applied for health benefits under the Producer Option Health Plan and that the claims for which this suit was brought were not covered by the 1981 plan. Attached to this motion were copies of the apparently unmodified 1981 plan and a letter from Fewell & Associates to the self-employed poultry producers in 1990 offering the Producer Option Health Plan.

In response, appellant argued that he had never received notice of the Producer Option Health Plan and that, if he had, he would have applied for that coverage. Additionally, appellant argued that he had never agreed to and had never been notified of any major benefit modifications of the 1981 plan. In his affidavit attached to

his response, appellant stated:

4. There is not much difference in the premiums for the two plans; I understand it's only about $35.00 a month, and if I had known I could have the 1991 plan, I would have applied for it if it is a better plan, but I didn't even know it existed until after I had my heart attack when the defendant wouldn't pay some of my claims. I should have the coverage they sold to me and the coverage I've paid for all these many years, and they should have given me the opportunity to apply for the 1991 plan if it is better than the 1981 plan that the defendant says I still have, but *either* policy should pay more than what's been paid.

5. Mr. Coleman also says they have made changes in my benefits, but they didn't tell me about any changes and I never got any letters or anything letting me know about any changes; I wouldn't have agreed to them changing my coverage to something less than what I have had in the past and what I have been paying good money for ever since the 'sixties. I never agreed to less benefits, and I would have gotten other insurance somewhere else if they had told me they were going to give less benefits, but they never told me. They used to have just one policy and it had good benefits, but they say they now have *two* policies, so the new one must have better benefits since the premium is higher than the other one which they say I still have; but they never let me apply for the new one, and this is not right for them to tell me I can't have the new one since I didn't apply for it. I didn't apply for it because I *couldn't* apply for it since I didn't know they had it.

6. The plan that I bargained for and paid insurance premiums for all these many years should cover all of the items I am now claiming in my complaint, whether it is the 1981 plan or the 1991 plan. Under the 1981 plan, which the insurance company says I now have, I would have to pay $2100.00 of my medical expenses due to my heart attack and the defendant should pay the balance. My total expenses were $50,995.84, my part would be $2100.00 and the defendant's part would be $48,895.84. They have only paid $24,152.67, so they owe me $24,743.17 even under the 1981 plan which they insist I still have.

At the hearing on the motion for summary judgment, appellant argued that, under basic principles of contract law, appellee could not modify the insurance contract without notifying appellant and without obtaining appellant's agreement. He also argued that whether and how the parties had actually modified the policy and whether his claims were covered under it were questions of fact.

Appellant further argued that, because Mr. Coleman had served as counsel for appellee, the court should not consider his affidavit in support of the motion for summary judgment. The trial judge noted that Mr. Coleman wrote the affidavit a few months after being removed as counsel and held that his affidavit could properly be considered. On April 20, 1995, the circuit judge entered summary judgment for appellee.

■■ Summary judgment should be granted only when a review of the pleadings, depositions, and other filings reveals that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *Johnson* v. *Harrywell, Inc.*, 47 Ark. App. 61, 885 S.W.2d 25 (1994). In considering a motion for summary judgment, the court may also consider answers to interrogatories, admissions, and affidavits. *Muddiman* v. *Wall*, 33 Ark. App. 175, 803 S.W.2d 945 (1991). When the movant makes a *prima facie* showing of entitlement, the respondent must meet proof with proof by showing a genuine issue as to a material fact. *Johnson* v. *Harrywell, Inc.*, 47 Ark. App. at 63. In an appeal from the granting of summary judgment, we review facts in the light most favorable to the appellant and resolve any doubt against the moving party. *Id.* Summary judgment is not proper where evidence, although in no material dispute as to actuality, reveals aspects from which inconsistent hypotheses might reasonably be drawn and reasonable minds might differ. *Id.* On appellate review, we need only decide if the granting of summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of a motion left a material question of fact unanswered. *Id.*

■ Appellant argues that the circuit judge erred in holding that appellee could unilaterally, without consent from or notice to appellant, modify the terms of the 1981 plan. Appellant argues that, since appellee is exempt under Ark. Code Ann. § 23-61-502 (Repl. 1994) from the requirements of the Arkansas Insurance Code, the basic rules of contract law, which require both parties to agree to a

modification of a contract, apply. It is true that both parties must agree to the modification of a contract and to the terms of modification. *Moss* v. *Allstate Ins. Co.*, 29 Ark. App. 33, 776 S.W.2d 831 (1989). *Accord Leonard* v. *Downing*, 246 Ark. 397, 438 S.W.2d 327 (1969). In *Afflick* v. *Lambert*, 187 Ark. 416, 418-19, 60 S.W.2d 176, 177 (1933), the court stated:

> It is ... a well-settled rule of this court that any parties who can make a contract can rescind or modify it by mutual consent. If they are capable of making the contract in the first instance, they may by mutual consent modify it in any manner.
>
> ....
>
> Whether there was a modification ... was a question of fact for the chancellor.

*See also Askew Trust* v. *Hopkins*, 15 Ark. App. 19, 688 S.W.2d 316 (1985).

■ Here, there is no case directly on point. However, as appellee points out, the group health agreement is between the Arkansas Poultry Federation and appellee; appellant is simply a plan participant. Appellee argues, therefore, that appellant's reliance on general principles of contract law is misplaced and points out that a similar issue arose in *Neely* v. *Sun Life Assurance Co. of Canada*, 203 Ark. 902, 159 S.W.2d 722 (1942). There, the supreme court held that a group policy can be canceled by mutual agreement of the insurer and the employer because it is a third-party beneficiary contract; the employee, who pays a part of the premium, will be bound by their action. *Accord Clapp* v. *Sun Life Assurance Co. of Canada*, 204 Ark. 672, 163 S.W.2d 537 (1942). In *Hendrix* v. *Republic National Life Insurance Co.*, 270 Ark. 955, 959, 606 S.W.2d 601, 603 (Ark. App. 1980), we stated: "Arkansas law contemplates that a group insurance policy is a contract between the employer and the insurer and not a contract between the employee and the insurer...."

■ Here, there is no dispute that the parties to the 1981 plan, appellee and the federation, agreed to modify the plan. Therefore, we do not believe that appellee was required to obtain appellant's agreement before putting such modifications into effect.

■ Appellant further argues that whether the purported

modifications to the 1981 plan exclude all of his claimed expenses is a question of fact. Appellant points out that, in its answer to Interrogatory No. 13, appellee only stated that an amount of $11,381.30 was ineligible. Appellant argues that his claim for an additional $13,157.87 has not even been addressed by appellee. Appellant also argues that, on its face, the 1981 plan provides such coverage. (Appellee apparently attached a copy of the original 1981 plan to its motion for summary judgment. However, it attached a copy of the *modified* 1981 plan to its answers to interrogatories.) Appellant contends that whether these modifications exclude all of his claims are questions of fact that should have been tried. Appellee responds that appellant failed to raise the issue of how the benefits were actually calculated to the trial court. Although the 1991 letter from Mr. Weeks explains the modifications to the 1981 plan, we do not believe that appellee proved that, as a matter of law, all of appellant's claims are excluded from coverage. In fact, from our review of the record, it is not possible to determine precisely how appellee applied the terms of the modified plan to deny each expense claimed by appellant. We therefore hold that appellee failed in its initial burden of making a *prima facie* showing of entitlement to judgment as a matter of law and that the summary judgment must be reversed and remanded in part for trial on this issue.

█ Additionally, appellant has raised the issue of whether it was proper for Mr. Coleman to sign an affidavit in support of the motion for summary judgment because he had acted as counsel for appellee. In *Bishop v. Linkway Stores, Inc.*, 280 Ark. 106, 655 S.W.2d 426 (1983), the supreme court stated that an attorney for a party cannot testify in person or give such testimony by affidavit. *Accord McIntosh v. Southwestern Truck Sales*, 304 Ark. 224, 800 S.W.2d 431 (1990). However, at the time he signed the affidavit, Mr. Coleman no longer represented appellee in this proceeding. We agree with the circuit judge that his affidavit could be properly considered by the court.

Affirmed in part; reversed and remanded in part.

STROUD and NEAL, JJ., agree.