James E. HAGANS and Bonnie J. Hagans *v.*
Lynn H. HAINES and Bonnie R. Haines

CA 98-301                                                        984 S.W.2d 41

Court of Appeals of Arkansas
Division IV
Opinion delivered December 2, 1998

*Lynn Frank Plemmons,* for appellant.

*Streett Law Firm,* by: *Alex G. Streett,* for appellee.

JOHN F. STROUD, JR., Judge. James E. and Bonnie J. Hagans appeal the denial of their complaint for specific performance of a contract for the sale of commercial real estate. They contend that the Pope County Chancery Court erred 1) in permitting extrinsic evidence of a collateral matter to alter the terms of or to attack an executed, integrated agreement; and 2) in finding that there was no enforceable contract. We agree on both points and reverse and remand.

At a hearing before the chancellor, testimony for appellants was given by Mr. Hagans and Rita Gilbreath, a title company employee, regarding a two-page document entitled "Real Estate Contract (Offer and Acceptance)." Appellant James Hagans signed as buyer, and both appellees signed as sellers at the end of the two-page instrument.

Ms. Gilbreath testified that Dr. Lynn Haines contacted her in September 1996 and requested that she find out from a particular individual with the Internal Revenue Service "what it would take" to have an IRS lien released on property that Dr. Haines wished to sell to Mr. Hagans. She learned that she would need to send the IRS an "offer and acceptance." Dr. Haines kept her informed about negotiations between buyer and seller, and on November 26, 1996, she prepared an offer and acceptance based on information from Dr. Haines and from Mr. Hagans, whom she had telephoned earlier that day. She faxed the document to Mr. Hagans, who signed it and faxed it back to her. Dr. and Mrs. Haines then came to her office, and she told them to look over the offer and acceptance to "make sure it was what they wanted to do." The Haineses signed the faxed copy in her presence the

afternoon of November 26. About two weeks later, when Ms. Gilbreath telephoned Dr. Haines regarding closing, he informed her that the parties had not worked out an easement problem.

Mr. Hagans testified that the offer and acceptance incorporated the complete agreement between himself and the Haineses. Before the scheduled closing date in December, however, Dr. Haines told Mr. Hagans that the deal was off unless he agreed to a utility easement across the back of the property that Dr. Haines needed in order to sell an adjacent lot. Mr. Hagans also testified that he and Dr. Haines had a verbal agreement that allowed Dr. Haines to stay in the building and pay rent for his office space. Mr. Hagans did not agree to the easement, there were no more conversations, and the deal never closed.

The two-page document that was the subject of testimony was admitted into evidence and is a part of the record before us. It makes no mention of an easement or of a rental agreement. A merger clause on the second page reads as follows:

> This Agreement, when executed by both Buyer and Seller, shall contain the entire understanding and agreement between the Buyer and Seller and agent with respect to the matters referred to herein and shall supersede all prior or contemporaneous agreements, representations and understanding with respect to such matters, and no oral representation or statement shall be considered a part hereof.

Witnesses for appellees included Bob Taylor, president and CEO of Boatmen's National Bank of Russellville; Cliff Goodin, a real estate broker; and Dr. and Ms. Haines. Additionally, Mr. Hagans was recalled as a witness.

Mr. Taylor testified that he had been involved in Mr. Hagans's negotiations to assume Dr. Haines's loan and to purchase his property. Mr. Taylor learned in December 1996 that Dr. Haines wanted to give the buyer of an adjacent lot an easement across the property. Although Mr. Taylor told Mr. Hagans that the bank had no problem with it, Mr. Hagans told him that he felt the easement was detrimental to the value of the property and that he was out of the deal.

Mr. Goodin testified that he attempted to get an easement across the property for a couple of vacant lots next to it that he sold to another doctor. In December Mr. Hagans told him that "he was through, finished, the price was changed and he was through."

Appellees Lynn and Bonnie Haines testified on their own behalf regarding the document they had signed. Dr. Haines testified that he signed the second page of the document, but that he did not agree to sign it as an offer and acceptance. When he referred to his agreement with Mr. Hagans regarding renting the property, appellants objected as follows:

> Objection, your Honor. We are violating the collateral evidence rule. I ask the court to find the document in question is a contract and any testimony altering the terms of that agreement should be barred by the court.

The court overruled the objection. Dr. Haines then testified that he and his wife signed only the second page because there was no stipulation for rent agreement, that Ms. Gilbreath had told them they needed to sign something in order to negotiate with the IRS, that they signed for the purpose of sending it to the IRS, that he was negotiating to sell the adjacent lots to another doctor, that Mr. Hagans did not want to give an easement, and that he had a verbal agreement with Mr. Hagans to remain in the clinic until at least June 1997. He also stated that Ms. Gilbreath was untruthful in her testimony, that he did not initial the first page because it did not contain information about the rental agreement, and that he specifically told Ms. Gilbreath he would not sign it.

Ms. Haines testified that she signed only the second page because the document had no rental agreement, that she asked Ms. Gilbreath about the absence of the agreement, that there were not two pages attached when she signed, and that when she specifically asked if the agreement was binding, Ms. Gilbreath said, "No." Mr. Hagans testified that he and Dr. Haines had a verbal agreement that Dr. Haines could stay in the building and pay rent for his office space.

*I.   Whether the trial court erred in permitting extrinsic evidence of a collateral matter to alter the terms of or attack an executed integrated agreement.*

Appellants contend that the parol evidence rule was violated by appellees' testimony that they did not intend the instrument to be an offer and acceptance because it contained no rental agreement. Appellants argue that the testimony was inadmissible in that it went to modification of the terms of the contract.

■ ■   Where a contract is plain, unambiguous, and complete in its terms, parol evidence is not admissible to contradict or add to the written contract. *Brown v. Aquilino*, 271 Ark. 273, 608 S.W.2d 35 (Ark. App. 1980). The parol evidence rule is a rule of substantive law in which all antecedent proposals and negotiations are merged into the written contract and cannot be added to or varied by parol evidence. *Id.* In *Cate v. Irvin*, 44 Ark. App. 39, 43, 866 S.W.2d 423,425 (1993), we further discussed the rule:

> The parol evidence rule prohibits the introduction of extrinsic evidence, parol or otherwise, which is offered to vary the terms of a written agreement; it is a substantive rule of law, rather than a rule of evidence, and its premise is that the written agreement itself is the best evidence of the intention of the parties. It is a general proposition of the common law that in the absence of fraud, accident or mistake, a written contract merges, and thereby extinguishes, all prior and contemporaneous negotiations, understandings and verbal agreements on the same subjects. It is well settled that a written contract may be modified by a later oral agreement. Such testimony is inadmissible if it tends to alter, vary, or contradict the written contract but is admissible if it tends to prove a part of the contract about which the written contract is silent.

(Citations omitted.)

■ ■   Testimony of an oral rental agreement could properly be admitted to show modification of the terms of a written contract if the agreement was made subsequent to the execution of the written contract, but the testimony here referred to an agreement made before the contract came into existence. Thus, the testimony was inadmissible under the parol evidence rule.

Furthermore, the merger clause in the signed instrument stated that the executed agreement was to contain the entire understanding and agreement between the parties with respect to the matters referred to within the contract; that the agreement was to supersede all prior or contemporaneous agreements, representations and understanding with respect to such matters; and that "no oral representation or statement shall be considered a part" of the agreement. We find that the trial court erred in admitting the testimony of a previous rental agreement, for the testimony was considered in abrogation of the clear and unambiguous terms of the written contract, and in violation of the explicit terms of the merger clause. A lease agreement intended to be applicable after the sale of property has closed is not a necessary part of an offer and acceptance, nor does its omission from the written contract prevent the lease agreement from being enforceable.

█ The reasoning above also applies to appellees' testimony that their purpose in signing the instrument was only to procure the release of an IRS lien on the property. Testimony of the parties' intent in signing the instrument was not admissible to contradict its plain, unambiguous, and complete terms.

*II. Whether the court erred in finding that there was no enforceable contract.*

█ The trial court here found that "the purported contract did not contain all of the agreements of the parties, that there was never a meeting of the minds,[1] and therefore there was no enforceable contract." A meeting of the minds does not depend upon the subjective understanding of the parties, but instead requires only objective manifestations of mutual assent for the formation of a contract. *Thurman v. Thurman*, 50 Ark. App. 93, 900 S.W.2d 221 (1995). The meeting of minds, which is essential to the formation of a contract, is determined by the expressed or manifested intention of the parties. *Dziga v. Muradian Bus. Brokers, Inc.*, 28 Ark. App. 241, 773 S.W.2d 106 (1989). The ques-

---

[1] The more modern term for "meeting of the minds" is "an objective indicator of agreement." *Fort Smith Serv. Fin. Corp. v. Parrish*, 302 Ark. 299, 789 S.W.2d 723 (1990); *Shea v. Riley*, 59 Ark. App. 203, 954 S.W.2d 951 (1997).

tion of whether a contract has been made must be determined from a consideration of the parties' expressed or manifested intention — that is, from a consideration of their words and acts. *Id.*

Here, the document admitted into evidence presents a complete understanding setting forth an agreement between buyer and seller, signed by both parties. The only evidence that the document was not a contract was the inadmissible testimony of appellees that the page was signed only for the purpose of sending the IRS something it required and that they did not intend the document to be a contract. Appellees' signing the instrument was an objective manifestation of mutual assent to the formation of the contract and is evidence that a meeting of the minds occurred. Testimony of appellees' intent that the instrument served a different purpose was not admissible to demonstrate their subjective purpose in signing the instrument.

In support of their position that the parties never had a meeting of the minds, appellees cite testimony by Mr. Taylor and Mr. Goodin that Mr. Hagans told them in December that he was "out of the deal." All parties, however, had signed the instrument the previous month, and a contract was in existence at the time of these reported conversations. Thus, the testimony at most could have gone only to show that terms of the contract were modified or rescinded, but appellees have not shown the required mutual consent for modification or rescission. *See Luningham v. Arkansas Poultry Fed'n Ins. Trust*, 53 Ark. App. 280, 922 S.W.2d 1 (1996).

Reversed and remanded for action in keeping with this opinion.

PITTMAN and ROGERS, JJ., agree.