Vernon WHITE, *et al. v.* J.H. HAMLEN & SON CO.

CA 98-1379                                    1 S.W.3d 464

Court of Appeals of Arkansas
Divisions I and II
Opinion delivered October 13, 1999

*Ed Daniel IV, P.A.*, by:  *Ed Daniel IV*, for appellants.

*Jess Askew III*, for appellee.

A NDREE LAYTON ROAF, Judge. This appeal is from a summary judgment order quieting title to certain lands in appellee, J. H. Hamlen & Son Co. (hereinafter "Hamlen"). Appellants Vernon White and several neighboring property owners (hereinafter "White") contend that genuine issues of material fact remain, thus making summary judgment inappropriate. We agree and reverse and remand.

The land at issue in this case is located on Hardin Island, a large island on the Arkansas River. Hamlen acquired title to a portion of the island in 1982. White and the other appellants own property located eastward and across the river from Hardin Island. However, the southeastern portion of the island claimed by appellee lies within the metes and bounds descriptions of appellants' property. Appellants, or their predecessors in title, have had title to their land since the mid-1940s or early 1950s.

Hardin Island was originally a peninsula connected to the west side of the mainland. Over thirty years ago, the Arkansas River, in its southeastward movement toward the Mississippi River, took an easterly turn at a certain point in Jefferson County, meandering around Hardin peninsula before returning to its main channel. This part of the river was known as Brodie Bend. In about 1966, the river's course was changed when the United States government condemned 3,317 acres of land, including over 300 acres on the Hardin property, to complete the Brodie Bend Cut-Off Project. The project straightened the river's course, severing Hardin peninsula from the mainland. The peninsula thus became Hardin Island. The former river channel that had meandered around the peninsula became a slackwater. This slackwater now lies between Hardin Island to the west and White's mainland property to the east.

On September 1, 1992, Hamlen filed suit in Jefferson County Chancery Court seeking to quiet title to the eastern shore of Hardin Island, i.e., that part of the island lying directly across the slackwater from White's property. Hamlen alleged that, for many years prior to the Brodie Bend Cut-Off Project, the river

eroded the shoreline of the eastern bank where White's land was situated. The resulting silt and sediment were deposited along the western bank, thus becoming part of the future Hardin Island area by the process of accretion. White disputed Hamlen's contention and counterclaimed, seeking to quiet the title to the property in himself and his neighbors.

On December 28, 1993, Hamlen filed a motion for summary judgment with six exhibits. The first five exhibits were aerial photographs taken in 1945, 1948, 1950, 1951, and 1957, and the sixth exhibit was a set of drawings prepared by Dan Robison, a registered land surveyor. Hamlen contended that these exhibits were conclusive proof that over a gradual period of time, White's land lying east of the river bank was lost by erosion and was deposited on Hardin Island, thereby vesting title to the increased land mass in it.

White did not dispute the changes in the river's course during the twelve-year period shown by Hamlen's exhibits but argued that Hamlen's proof did not establish that the portion of Hardin Island lying within the legal description of his land was caused by accretion (a slow and gradual addition or building up of lands due to the deposit of sediment eroded from upstream lands) rather than avulsion (a sudden and rapid disruption of a piece of ground due to the change in the course of a river), which would have allowed White to retain ownership. White also claimed title to the disputed lands pursuant to Ark. Code Ann. § 22-5-403 (Repl. 1996), which concerns the formation of lands in navigable waters. Further, White argued that Hamlen had not proved that the land lost by accretion from White's property was actually deposited on Hamlen's land. Attached to White's response was the affidavit of an employee of the United States Corps of Engineers, Louis Kealer, asserting that the government owned 343 acres of land on Hardin Island. According to White, even if the land that had eroded from his land was deposited on Hardin Island, the accretion could have been deposited on the government's property and not that claimed by Hamlen.

Following a hearing, the chancellor granted Hamlen's motion for summary judgment. He concluded that: 1) Hamlen's exhibits reflected a consistent pattern of erosion along the eastern bank of the river where White's property is situated; 2) the change in the course of the river was a slow, gradual process; 3) there was no evidence to support White's theory of avulsion; 4) Hamlen made a *prima facie* showing of entitlement to summary judgment, and the proof offered by White in response — Kealer's affidavit — did not create a genuine issue of material fact; and 5) Ark. Code Ann. § 22-5-403 did not apply in this case. White's appeal is brought from these rulings.

■ Our standard of review in summary judgment cases is well recognized. While it is no longer considered a drastic remedy, summary judgment is only appropriate when the state of the evidence as portrayed by the pleadings, affidavits, discovery responses, and admissions on file is such that the non-moving party is not entitled to a day in court. *Guidry v. Harp's Food Stores, Inc.*, 66 Ark. App. 93, 987 S.W.2d 755 (1999). The burden of sustaining a motion for summary judgment is on the moving party. *Id.* On appeal, we view the evidence in a light most favorable to the non-moving party and resolve any doubt against the moving party. *Luningham v. Arkansas Poultry Fed'n Ins. Trust*, 53 Ark. App. 280, 922 S.W.2d 1 (1996). Our task is to determine whether the evidentiary items presented by the moving party in support of the motion leave a material question of fact unanswered. *Id.*

■ We agree with White that material questions of fact exist regarding whether the changes in the land were brought about by accretion or avulsion. A riparian landowner is at the mercy of the river upon which his land is situated. He acquires, incident to his ownership, whatever land may be added by gradual and imperceptible accretion. *See Crow v. Johnston*, 209 Ark. 1053, 194 S.W.2d 193 (1946). At the same time, he assumes the risk of losing his property by its being gradually washed away by the waters of the river. *Id.* When a stream changes its course gradually, *i.e.*, by accretion, the boundaries of the riparian land owners

change with the stream. *Goforth v. Wilson*, 208 Ark. 35, 184 S.W.2d 814 (1945). When a stream shifts suddenly, *i.e.*, by avulsion, the boundaries of the riparian landowners do not change with the stream. *Id.* The question of whether accretion or avulsion has occurred is generally one of fact. *See Pannell v. Earls*, 252 Ark. 385, 483 S.W.2d 440 (1972).

Hamlen's theory in this case was that a gradual erosion of land occurred along White's riparian boundary and that the land was deposited along what ultimately became Hardin Island. Hamlen sought to prove its theory by use of the aerial photographs mentioned earlier and by a set of four drawings prepared by a land surveyor. The chancellor noted that the photographs, taken over the twelve-year period between 1945 and 1957, indicated that land had gradually eroded away from a portion of the eastern shore of the river where White's property lay. However, the four drawings, which depict the river's course in 1825, 1945, 1957, and 1975, and indicate a dramatic shift in course sometime between 1825 and 1945, then slight shifts in the subsequent years. We cannot say that these exhibits entitle Hamlen to judgment as a matter of law.

First, there is a substantial gap of six years between the last two photographs, during which time change occurred with regard to the river's course. Additionally, Hamlen's photographs are illustrative of intermittent moments in a twelve-year window between 1945 and 1957. They do not indicate what effect, if any, the change in the river's course had during more recent times, especially in light of the Brodie Bend Cut-Off Project, which actually changed the Hardin property from a peninsula to an island. Further, the drawings provided by Hamlen, which cover a 150-year period, show a substantial shift in both location and direction of the curve of the river, from a westward bow to an eastward bow, and from section sixteen to section fifteen, a distance of more than a mile. This shift is so large that the change could be explained, at least in part, by avulsion as much as by accretion. In light of these considerations, we hold that questions of material fact remain to be answered on this issue.

■ ■ Part of the basis for the chancellor's decision to grant summary judgment was White's failure to dispute the changes in the course of the river as shown by Hamlen's photographs. However, summary judgment is not proper where the evidence, although in no material dispute as to actuality, reveals aspects from which inconsistent hypotheses might reasonably be drawn. *Luningham, supra.* Further, the chancellor noted White's failure to meet proof with proof upon Hamlen's making a *prima facie* case for summary judgment. Based upon our foregoing analysis of the case, we do not believe Hamlen made a *prima facie* case. When a movant does not make a *prima facie* case showing entitlement to summary judgment, the burden of going forward does not shift to the opposing party. *Wolner v. Bogaev,* 290 Ark. 299, 718 S.W.2d 942 (1986).

■ We also hold that a fact question remains with regard to the applicability of Ark. Code Ann. § 22-5-403. This statute provides that, when land forms in navigable waters within the original boundaries of the former owner of the land, title vests in the former owner. The purpose of the statute is to give title to the former owner where his land reforms as an island within the boundaries of his original grant. *Knight v. Rogers,* 202 Ark. 590, 151 S.W.2d 669 (1941). White argues that one of the photographs viewed by the chancellor revealed a large sandbar or island that had formed in the river channel between White's property and the eastern edge of the peninsula that became Hardin Island and, because section 22-5-403 does not apply to sandbars, the statute was inapplicable. It is true that the statute applies to islands of a permanent character and not to sandbars. *See Porter v. Arkansas Western Gas Co.,* 252 Ark. 958, 482 S.W.2d 598 (1972). However, a reading of the chancellor's opinion does not convince us that Hamlen's exhibit shows, as a matter of law, that the formation was an island rather than a sandbar. Therefore, summary judgment was erroneously granted on this point as well.

Finally, we mention an issue raised by White concerning the alleged insufficiency of the property description as contained in Hamlen's 1982 deed and as set forth in Hamlen's petition to quiet

title. Because this issue may be remedied or developed further on remand, we decline to address it now.

Reversed and remanded.

PITTMAN, HART, and ROGERS, JJ., agree.

BIRD and NEAL, JJ., dissent.

SAM BIRD, Judge, dissenting. I respectfully dissent from the majority's decision reversing the chancellor's granting of summary judgment in this case.

First, the decision of the trial court should be affirmed pursuant to Rule 4-2(b)(3) of the Rules of the Supreme Court because the appellants' abstract is flagrantly deficient. In reading the chancellor's written findings of fact, which are set forth verbatim in an addendum to appellants' abstract, it is obvious that his decision was based, in significant part, on five aerial photographs that were attached as exhibits to appellee's motion for summary judgment and referred to in affidavits attached to the motion. The chancellor found these aerial photographs to "reflect a consistent pattern of erosion of the left bank of the Arkansas River, where the [appellants'] property descriptions are located." The chancellor also noted in his findings that "the [appellants] do not dispute the change in the course of the Arkansas River as it relates to the lands in question as depicted in the aerial photographs. . . ."

However, despite the fact that the five aerial photographs obviously constituted significant evidence supporting appellee's motion for summary judgment, and despite the fact that the chancellor relied on the photographs in reaching his decision to grant the motion, appellants neither abstracted the photographs in words nor attached reproduced copies of the photographs to their abstract as required by Rule 4-2(a)(6) of the Rules of the Supreme Court.

In my view, it is not possible for this court to understand and conduct a meaningful appellate review of the decision of the trial court, to the extent that it was based on the photographs, without

examining those photographs. *Douthitt v. State*, 326 Ark. 794, 935 S.W.2d 241 (1996); *Donihoo v. State*, 325 Ark. 483, 931 S.W.2d 69 (1996). Nonetheless, appellants have failed to make them a part of the abstract on appeal, resulting in a flagrantly deficient abstract.

Secondly, even if appellants' abstract is not flagrantly deficient in its failure to include the aerial photographs, I would affirm the trial court's decision because I believe, contrary to the conclusion of the majority, that the appellee presented a prima facie case of entitlement to summary judgment, and that appellants' response to appellee's motion did not create a genuine issue of material fact. *See Mathews v. Garner*, 25 Ark. App. 27, 751 S.W.2d 359 (1988). Appellee's motion for summary judgment averred that it claimed title to the land in issue because it has accreted to appellee's property on Hardin Island. Attached to the motion are the series of five aerial photographs referred to above, which are alleged by appellee to depict the gradual erosion, between 1945 and 1957, from appellants' land on the east boundary of the Arkansas River and the build up of appellee's land on Hardin Island located in the river to the west of where appellants' land was originally located. Also attached to appellee's motion are a series of four drawings prepared by Dan Robison, a registered professional land surveyor, along with the affidavit of Robison stating that the drawings depict the changing course of the channel of the Arkansas River from 1819 to 1975, alleged by appellee to dramatically and graphically depict the "cumulative effect of the westward movement of the Arkansas River . . . ."

Appellants' response to appellee's motion for summary judgment merely denied appellee's claim of title to all of Hardin Island, contending that a part of the island was owned by the United States of America. Attached to appellants' response was the affidavit of Louis Kealer, from the Little Rock District of the U.S. Corps of Engineers, stating, in substance, that in 1966 the United States had acquired title to 343 acres on Hardin Island. Significantly, however, appellants admitted in their response that they did not dispute the changes in the course of the Arkansas River as

depicted in the aerial photographs but, rather, disputed that those photographs "prove the matters for which they were offered as proof," and alleged that the photographs "speak for themselves." The problem with this response is that appellants refer to no evidence that they would produce at trial that could contradict what the appellee contends that the photographs "say."

Appellants' response to appellee's motion does not allege, much less suggest the existence of any proof, that the growth of Hardin Island, and the corresponding diminution of appellants' land, was caused by anything other than accretion. Although appellants' counsel argued orally to the chancellor that the movement of their land from the east boundary of the river to the east part of Hardin Island "could have" been caused by an avulsion between 1825 and 1945, or "could have" been caused in 1967 when the Corps of Engineers severed Hardin Peninsula from the mainland to create Brodie Bend Cut-off, appellants referred to no proof, by affidavit, photograph, drawing, or otherwise, to support this argument.

I certainly agree with the majority that summary judgment is only appropriate when the state of the evidence, as portrayed by the pleadings, affidavits, discovery responses, and admissions, is such that the non-moving party is not entitled to a day in court. I disagree, however, with the majority's conclusion that summary judgment is not proper in this case. All the *evidence* that the trial court had to consider supports appellee's position that erosion of appellants' land, and the corresponding growth of Hardin Island, was the result of accretion. Although appellants argued that the event "could have" been occasioned by an avulsion, either between 1825 and 1945, or in 1967, they brought to the chancellor's attention no *evidence* that they could produce at a trial that would tend to prove the occurrence of such an event.

The purpose of the summary-judgment remedy is to avoid the waste of time, work, and money involved in requiring the trial of a case in which a party cannot produce evidence that supports the existence of a fact necessary to establish his claim or defense.

*Joey Brown Interest, Inc. v. Merchants Nat'l Bank of Fort Smith*, 284 Ark. 418, 683 S.W.2d 601 (1985). In the case at bar, appellants postulated nothing but a theory upon which they might be able to prevail at trial. They did not succeed in establishing the existence of any evidence that supported their theory.

In support of its conclusion that a fact issue exists, the majority cites *Pannell v. Earls*, 252 Ark. 385, 483 S.W.2d 440 (1972), as authority for the proposition that the question of whether accretion or avulsion has occurred is generally one of fact. This is, no doubt, an accurate statement. However, it begs the question in this case as to whether there is any evidence in existence that supports appellants' argument that the fact of avulsion occurred. Just because there is a fact question raised in a case does not mean that a summary judgment is not an appropriate remedy where a party cannot establish the existence of evidence to support the fact he seeks to prove. *See Joey Brown v. Merchants Nat'l Bank of Fort Smith, supra.*

The majority correctly states that summary judgment is not proper where the evidence, although not in material dispute as to actuality, reveals aspects from which inconsistent hypotheses may be drawn, citing *Luningham v. Arkansas Poultry Fed'n Ins. Trust*, 53 Ark. App. 280, 922 S.W.2d 1 (1996), but it misapplies that proposition to this case because appellants produced no *evidence* that would support their hypotheses that the growth of Hardin Island was the result of avulsion and not accretion.

The majority also suggests that there are gaps in time between the dates of the aerial photographs during which the trial court could not have known what occurred with regard to the river's course. This is also an accurate statement, but it also begs the question in this case. In their response to appellee's motion for summary judgment, appellants expressly stated that they did not dispute the changes in the river's course as depicted in the photographs, and expressly admitted that the photographs speak for themselves. The chancellor, who had the benefit of viewing the photographs, concluded that they were sufficient to establish

that the changes in the river's course resulted from accretion. Appellants did not suggest that there were any other photographs, taken either during gaps between the photographs produced by appellee or at any other time, that would disprove that the changes in the river's course resulted from accretion.

I am especially puzzled by the majority's conclusion that there is a fact question remaining regarding the applicability of Ark. Code Ann. § 22-5-403 (Repl. 1996), relating to the owner-ship of islands that form in navigable streams. The majority dis-agrees with the chancellor's conclusion that a formation in the river channel between appellants' land and the eastern edge of Hardin Peninsula is a sandbar, not an island, thus rendering section 22-5-403 inapplicable. On this point, the chancellor's opinion states as follows:

> Exhibit "B" to the Motion for Summary Judgment shows a sand-bar forming in the channel of the Arkansas River. Defendants claim the sandbar was land formed in navigable waters, and any portion of the land falling within the metes and bounds descrip-tions in Defendants' deeds therefore belongs to the Defendants under Ark. Code Ann. § 22-5-403(a). This statute, however, applies only to islands, as opposed to sandbars. See, e.g., Glover v. Walter, 252 Ark. 1294 [1293] (1972). Here, the photographic evidence shows that the sandbar had no vegetation and no fast land but was simply a part of the river bed. As of 1948, "this principal sandbar had no permanent character, no permanent vegetation, no fast land, and was simply a part of the river bed, i.e., sandbar." Porter v. Arkansas Western Gas, 252 Ark. 958, 968 (1972). The Court concludes that Ark. Code Ann. § 22-5-403 does not apply to the sandbar at issue in this case because it was not an island and had no permanent character.

I cannot help but wonder what it is in the chancellor's opin-ion that causes the majority to say that, "a reading of the chancel-lor's opinion does not convince us that Hamlen's exhibits show, as a matter of law, that the ultimate formation was an island rather than a sandbar." Exhibit B to the motion for summary judgment was one of the five aerial photographs that appellants failed to abstract and are not, therefore, a part of the transcript on appeal.

As stated earlier, the chancellor had the benefit of viewing those aerial photographs, but we do not. I do not see anything in the chancellor's opinion from which the majority could possibly determine, in contradiction of the chancellor's finding, that the formation in the river might be an island, rather than a sandbar. I do not see any way that the majority judges, who have not viewed the aerial photographs, can disagree with the chancellor's conclusion, which was reached after he viewed that aerial photographs, that the formation in the river "had no vegetation and no fast land but was simply a part of the riverbed. . . ."

I would affirm the chancellor's grant of summary judgment in favor of the appellee.

NEAL, J., joins in this dissent.