Dr. Winfred L. Thompson, President University of Central Arkansas 201 Donaghey Avenue Conway, AR 72035-0001
Dear Dr. Thompson:
I am writing in response to your request for my opinion regarding the legal sufficiency of Section 12 of the Educators Legal Liability Insurance Policy (the "Policy") issued to the University of Central Arkansas ("UCA"), which provides:
 We will not settle any Claim without the agreement of the Insured. If the Insureds refuse to consent to a reasonable settlement we recommend that is acceptable to a claimant, our liability for Loss for that Claim is limited to the amount of Damages for which the Claim could have been settled and Defense Costs incurred by us or with our consent up to the date of such refusal.
RESPONSE
Although I am not authorized to render official opinions regarding the application and effect of particular contractual provisions — especially ones governed by New York law, as in this case — I can and will opine that Section 12 of the Policy is not facially void as offensive to public policy or any provision of the Arkansas Constitution or Code.
Section 6-67-103(d)(1)(C) of the Arkansas Code expressly authorizes the UCA Board of Directors to contract on UCA's behalf — a power they presumably exercised in contracting for the Policy. As a general proposition, a contract arises only when there has been a "meeting of the minds" between the parties thereto. In Johnston v. Curtis,70 Ark. App. 195, 16 S.W.3d 283, 286-87 (2000), the Arkansas Court of Appeals described this requirement as follows:
 A meeting of the minds, or what is more commonly known as an objective indicator of agreement, see Fort Smith Serv. Fin. Corp. v. Parrish, 302 Ark. 299, 789 S.W.2d 723 (1990), does not depend upon the subjective understanding of the parties, but instead requires only objective manifestations of mutual assent for the formation of a contract. Hagans v. Haines, 64 Ark. App. 158, 984 S.W.2d 41 (1998). The meeting of the minds is essential to the formation of a contract and is determined by the expressed or manifested intention of the parties. Id. The question of whether a contract has been made must be determined from a consideration of the parties' expressed or manifested intention determined from a consideration of their words and acts. Id.
In Western World Insurance Co. v. Branch, 332 Ark. 427, 431,965 S.W.2d 760 (1998), the Arkansas Supreme Court specifically articulated the restrictions that might limit the terms of a policy of insurance:
 It is well settled that an insurer may contract with its insured upon whatever terms the parties agree so long as the terms are not contrary to a statute or public policy. Pardon v. Southern Farm Bureau Cas. Ins., 315 Ark. 537, 868 S.W.2d 468 (1994); Shelter v. Gen. Ins. Co. v. Williams, 315 Ark. 409, 867 S.W.2d 457 (1993); Guaranty Nat'l Ins. v. Denver Roller Inc., 313 Ark. 128, 854 S.W.2d 312 (1993). To determine the public policy of this state, we look to our statutes and constitution, Guaranty Nat'l Ins., supra; Sterling Drug, Inc. v. Oxford, 294 Ark. 239, 743 S.W.2d 380 (1988), because public policy is declared by the General Assembly, and not this court. Davis v. Ross Prod. Co., 322 Ark. 532, 910 S.W.2d 209 (1995); Nabholtz Const. Corp. v. Graham, 319 Ark. 396, 892 S.W.2d 456 (1995).
With the exceptions just noted, an insurer is free to condition its coverage in whatever manner it can persuade the insured to accept. As the Court noted in State Farm Mutual Automobile Insurance Co. v. Belshe,195 Ark. 460, 464, 112 S.W.2d 954 (1938):
 [T]he insurance company may make use of such language as it may please to express the conditions upon which it is willing to issue its policy. The insured, by acceptance, approves such policy with all the conditions therein contained, so long as they are reasonable and not contrary to public policy.
However, to be given effect, any exclusion of coverage must be plainly expressed:
 Under Arkansas law, the intent to exclude coverage in an insurance policy should be expressed in clear and unambiguous language, and an insurance policy, having been drafted by the insurer without consultation with the insured, is to be interpreted and construed liberally in favor of the insured and strictly against the insurer. Baskette v. Union Life Ins. Co., 9 Ark. App. 34, 36,652 S.W.2d 635, 637 (1983). If the language in a policy is ambiguous, or there is doubt or uncertainty as to its meaning and it is fairly susceptible of two or more interpretations, one favorable to the insured and the other favorable to the insurer, the one favorable to the insured will be adopted. Drummond Citizens Ins. Co. v. Sergeant, 266 Ark. 611, 620, 588 S.W.2d 419, 423 (1979).
Nationwide Mutual Insurance Co. v. Worthey, 314 Ark. 185, 190-91,861 S.W.2d 307 (1993).
Not being a finder of fact, I cannot formally opine whether Section 12 of the Policy is enforceable under the standard just recited and the specific circumstances of this case. However, I will note that Section 12 clearly qualifies as an exclusion of coverage: it expressly provides that if the insured refuses to settle a claim for an amount recommended by the insurer, the insured cannot recover (1) any damages eventually awarded in excess of the proposed settlement amount; and (2) any defense costs incurred following the date of the insured's refusal to settle. The language of Section 12 is totally unambiguous in imposing these conditions, and there is consequently no basis for considering alternative interpretations. As the Supreme Court has noted, if "there is no ambiguity in the [policy's] language, it is unnecessary to resort to rules of construction." Birchfield v. Nationwide Insurance, 317 Ark. 38,41, 875 S.W.2d 502 (1994), citing Arkansas Kraft Corp. v. Boyed SandersConstruction Co., 298 Ark. 36, 764 S.W.2d 452 (1989); Southern FarmBureau Casualty Insurance Co. v. Williams, 260 Ark. 659, 543 S.W.2d 467
(1976).
I can further opine that Section 12 of the Policy contravenes no provision of the Arkansas Constitution or Code and that it consequently does not offend Arkansas public policy. Indeed, to the extent this provision encourages the settlement of disputes, it might be described aspromoting public policy. See McCoy Farms, Inc. v. J M McKee,263 Ark. 20, 33, 563 S.W.2d 409 (1978) ("It is the policy of the law to encourage settlement of litigation and to uphold and enforce contracts of settlement if they are fairly arrived at and not in contravention of law or public policy."); Ark. R. Civ. P. 68 (providing that if a litigant rejects an offer that judgment be entered against his opponent, he will be charged with his opponent's litigation costs and expenses from the date of the rejection if the amount of the ultimate judgment does not exceed the offer).
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP/JHD:cyh