GOFORTH *v.* WILSON.

4-7499                                                184 S. W. 2d 814

Opinion delivered January 15, 1945.

*Eugene Coffelt*, for appellant.

*A. L. Smith*, for appellee.

McFADDIN, J. This appeal involves the boundary line between opposite riparian owners on the Illinois River, a non-navigable stream in Benton county, Arkansas.

J. B. Goforth died seized and possessed of 160 acres, being the west half of the west half of section 32. The Illinois River runs in a general east-to-west direction through the land, and the public highway runs from northeast to southwest. The will of J. B. Goforth, executed shortly before his death in 1938, provided:

"Second, I devise and bequeath to my son, Walter Goforth all of the farm now belonging to me, known as the Goforth Farm on the Illinois, five miles south of Siloam Springs, lying north of the center of the Illinois River, and all that part of said farm on the south side of said Illinois River lying upon the west side of the highway running from Siloam Springs through Lake Francis Park to Cincinnati to his use and for his life only and at his death all the said real property I bequeath Loren Goforth, son of Walter Goforth.

. . .

"Fourth, I further bequeath to my beloved son, Pryor Goforth, all of the farm known as the Goforth farm hereinbefore described on the Illinois River lying south of the river and east of the highway to my son, Pryor. Goforth."

Appellants are the beneficiaries under § 2 of the will; and appellees are the grantees of Pryor Goforth, the beneficiary under § 4. The deed from Pryor Goforth to appellees described the land as follows:

"Also the west half (W½) of the southwest quarter (SW¼) of section thirty-two (32), township seventeen (17) north of range thirty-two (32) west, containing seventy-three (73) acres, more or less, being all the farm known as the Goforth farm hereinafter described as lying south of the Illinois River and east of the highway, running from Siloam Springs through Lake Francis Park

into Cincinnati, Arkansas, containing in all eighty acres, more or less. The center of the river bed being the north line of said lands hereby conveyed.''

This deed contained an error in the range, but that is immaterial to the consideration of this case.

The appellants filed this suit claiming (1) that the deed to appellees was a cloud on the title of appellants; and (2) that the Illinois River had changed its course by an avulsion in 1943, and, as between appellants and appellees, the main channel in 1938 remained the boundary line rather than the present channel. Many witnesses were heard; and the chancellor personally inspected the premises. From a decree dismissing plaintiffs' complaint, there is this appeal.

I. *Change of the River.* The applicable rules of law may be stated as follows:

(1)  The navigability of the stream at the place in issue is a question of fact. *Barboro* v. *Boyle,* 119 Ark. 377, 178 S. W. 378; *St. L., I. M. & S. Railway* v. *Ramsey,* 53 Ark. 314, 13 S. W. 931, 8 L. R. A. 559, 22 A. S. R. 195; 45 C. J. 418; 27 R. C. L. 1315. There is no contention that the Illinois River was navigable at the places here involved.

(2)  The riparian owner upon a non-navigable stream owns to the center of the stream ratably with other riparian owners. *Lutesville Sand & Gravel Co.* v. *McLaughlin,* 181 Ark. 574, 26 S. W. 2d 892; *Kilgo* v. *Cook,* 174 Ark. 432, 295 S. W. 355; *Barboro* v. *Boyle,* 119 Ark. 377, 178 S. W. 378; 67 C. J. 821; 27 R. C. L. 1371.

(3)  When a stream changes its course gradually— *i.e.,* by accretion—the boundaries of the riparian owners change with the stream. *Wallace* v. *Driver,* 61 Ark. 429, 33 S. W. 641, 31 L. R. A. 317; *Nix* v. *Pfeifer,* 73 Ark. 199, 83 S. W. 951; 1 R. C. L. 228.

(4)  But when the stream shifts suddenly—*i.e.,* by avulsion—the boundaries of the riparian owners do not change with the course of the stream. *Wallace* v. *Driver,*

61 Ark. 429, 33 S. W. 641, 31 L. R. A. 317; *Desha* v. *Erwin*, 168 Ark. 555, 270 S. W. 965; 67 C. J. 828; 1 R. C. L. 229.

(5) The test as to what is gradual or sudden—*i.e.*, accretion or avulsion—is, that although the witnesses may see from time to time that progress has been made in the changing of the course, still if it could not be perceived while the process was going on, then the change is an accretion and not an avulsion. *Nix* v. *Pfeifer*, 73 Ark. 199, 83 S. W. 951; *Philadelphia Co.* v. *Stimson*, 223 U. S. 605-13, 32 S. Ct. 340, 56 L. Ed. 570; 9 C. J. 195; 1 R. C. L. 231. See, also, *Bouldin* v. *Kosminsky*, 100 S. W. 892, 82 Ark. 603.

The application of these legal principles to the case at bar necessarily leads to an affirmance of the decree of the chancery court. It is practically undisputed: (1) that at the present time there is an island of some three or four acres situated in the Illinois River between the south bank and the north bank; (2) that the main current is now north of this island, and cutting into the north bank for some distance; and (3) that south of the island there is a slough where water flows in high-water times only. Such are the conditions today. The appellants claim: (1) that in 1938 (when the will of J. B. Goforth was executed and probated) the main channel of the river was in what is the slough south of the island; (2) that the island was connected to the north bank by a peninsula at the east end of the island; (3) that what is now the main channel north of the island was in 1938 only a slough; and (4) that the change of the channel from south of the island to north of the island came about through an avulsion in 1943.

The chancery court decreed the center of the Illinois River "as it now traverses the lands" to be the correct boundary between the parties. This finding is necessarily adverse to appellants' claim of an avulsion in 1943. The burden of showing an avulsion was on appellants in the lower court, because the appellants were plaintiffs. The burden of showing error in the chancery decree is likewise on the appellants in this court. We hold that the

burden was not discharged in the chancery or in this court.

Two airplane photographs were introduced without objection. One was made in 1938, and the other in 1941. Each of these shows the island in the river at the time of the photograph, and water flowing in the channel to the north, as well as to the south, of the island. In other words, the island existed prior to 1938, and was not created by an avulsion in 1943, as claimed by the appellants. Furthermore, the proof of avulsion in 1943 is entirely too fragmentary and uncertain to show that the change was other than by accretion. The evidence establishes that the river gradually deepened its channel to the north of the island and silted up the channel south of the island, thus changing by accretion instead of avulsion.

We reach the conclusion that there is not sufficient proof of avulsion, and that the boundary line between the two parties is the middle thread of the stream at ordinary low water mark. The decree of the chancery court, fixing the boundaries between the parties to be the center of the Illinois River as it now traverses the lands, is in all things correct.

II. *Cloud on Appellants' Title.* Appellants claim that the description in the deed from Pryor Goforth to appellees is a cloud on the title of appellants, irrespective of the course of the stream: That is, appellants point out that the deed says in one place "west half of the southwest quarter of section thirty-two," whereas Pryor Goforth only received so much of the land as was south of the river and east of the highway. We find no merit in this contention. The complete description in the deed to appellees has been heretofore quoted in this opinion. The deed specifically recites the lands conveyed to be so much of the Goforth farm as lies "south of the Illinois River and east of the highway." This particular description restrains and limits the general description. In *Phillips* v. *Porter,* 3 Ark. 18, 36 Am. Dec. 448, Mr. Justice LACEY said (p. 59):

"Where lands are first described generally, and afterward a particular description added, that will restrain and limit the general description." See, also, 16 Am. Juris. 600.

Finding no error, the decree of the chancery court is in all things affirmed.