YOUNTS *v.* CROCKETT.

5-3354                                      385 S. W. 2d 928

Opinion delivered January 25, 1965.

*Neill Bohlinger* and *Cooper Jacoway,* for appellant.

*Shelby R. Blackmon,* for appellee.

GEORGE ROSE SMITH, J. This is a suit by the appellants, Younts and his wife, to quiet their title to a tract

of six or seven acres lying on the west bank of the Arkansas river. In 1917 the land in dispute was part of a larger tract which was platted in that year as Lot 1. As platted, Lot 1 was a long narrow lot that extended from the river bank on the east to Lot 5 on the west. The appellants are the owners of Lot 5. They contend that after the two lots were platted the river gradually moved to the west to such a distance that Lot 1 was completely submerged and eroded away. They further contend that the river then gradually moved back to the east, so that the parcel now in dispute was re-created as an accretion to Lot 5.

The appellees, Crockett and his wife, hold the record title to the land in controversy. They deny that the river ever shifted sufficiently far to the west to destroy the identity of Lot 1 in its entirety. The chancellor decided the issue in favor of the appellees, holding that the plaintiffs had failed to sustain the burden of proving that Lot 1 had been destroyed by erosion.

The question is essentially one of fact, the parties being substantially in agreement about the controlling rules of law. If the gradual westward movement of the river's channel finally submerged Lot 1, so that it was wholly engulfed by the shifting bed of the river, Lot 1 went out of existence. In that event the tract now in dispute would have re-emerged as an accretion to Lot 5. *Wallace* v. *Driver*, 61 Ark. 429, 33 S. W. 641, 31 L.R.A. 317. On the other hand, if the western boundary of Lot 1 was submerged only by temporary overflows that did not last long enough to establish a new high-water mark as that term is defined in our cases, Lot 1 was not destroyed. *St. L., I.M. & S. Ry.* v. *Ramsey*, 53 Ark. 13 S. W. 931, 8 L.R.A. 559, 22 Am. St. Rep. 195; *State ex rel. Thompson* v. *Parker*, 132 Ark. 316, 200 S. W. 104.

The principal testimony tending to support the appellants' position is that given by Mr. Younts himself. He bought Lot 5 in 1950, but he had lived in the vicinity since 1935, when he was in his late teens. In 1935 the channel of the river was more than half a mile east of the boundary between Lot 1 and Lot 5. Younts says that be-

tween 1935 and 1942 the river moved gradually to the west until it had crossed this boundary by about fifty feet. This gradual movement does not seem to have been continuous, however, for Younts testified that the river "moved slowly by caving [the bank] some on each high water." Upon this proof the chancellor may have found that the stream's progress to the west occurred sporadically in periods of temporary overflow.

According to Younts, the main channel of the river flowed west of Lot 1 for eight years, from 1942 until it began to shift back toward the east in 1950. On cross examination and again on rebuttal Younts stated positively and unequivocally that the western edge of Lot 1 was completely submerged for eight years. For instance, upon being asked whether this land was under water continuously during that interval or for only part of the time, he replied, "Continuously."

These statements by Younts are only scantily corroborated by other witnesses and in our opinion are outweighed by the appellees' proof. A map prepared in 1947 by the engineers for a drainage district shows that Lot 1 was *not* then under water. Four witnesses for the appellees—Crockett, Simmons, Hall, and Teasley—testified that several acres of the tract in dispute were in cultivation in 1946 and succeeding years. An aerial photograph taken in 1950 indicates that the river was then 910 feet east of the common boundary between Lot 1 and Lot 5.

The appellants rely strongly upon an undated aerial photograph, apparently taken in 1945, that seems to show that the river's waters were then west of the boundary line in question. We are unwilling to accept this single exhibit as decisive, for (a) the one witness who attempted to interpret it may have been mistaken about where the lands in controversy were portrayed, (b) the river may have been at a temporary flood stage, and (c) the contention that Lot 1 was completely and permanently inundated in 1945 cannot be reconciled with the appellees' persuasive proof that part of this same land was

susceptible of cultivation in 1946. Finally, there are indications, including a 1950 aerial photograph, that the timber on Lot 1 could not have reached its size at the time of trial if the land had been part of the river bed as late as 1950.

As plaintiffs the appellants had the burden of proving that the channel of the river, as distinguished from its temporary overflow, crept so far westward that the boundary between the two lots was wholly submerged. After a careful study of the testimony and the exhibits we are unable to say that the weight of the evidence is contrary to the chancellor's conclusion that this burden of proof was not sustained.

Affirmed.