Guy BOBO and Nellie Bobo *v.* David W. JONES,
the Estate of Clinton D. Jones, Deceased, Dorothy Jones,
A. G. Martin, Jr., Billie C

04-1263                                          222 S.W.3d 197

Supreme Court of Arkansas
Opinion delivered January 12, 2006

[Rehearing denied February 16, 2006.*]

---

* CORBIN, J., not participating.

*Rieves, Rubens & Mayton*, by: *Kent J. Rubens*; and *Lavender Law*, by: *G. William Lavender*, for appellants.

*Wilson, Walker & Short*, by: *Charles M. Walker*; and *Wm. Randal Wright*, for appellee.

BETTY C. DICKEY, Justice.   This appeal arises from an order of the Circuit Court of Hempstead County, quieting title to the lands in dispute to appellees and dismissing appellants' claim for a prescriptive easement and for a permanent restraining order. Appellants now appeal the order, alleging that the trial court erred when it held that the lands in dispute should be titled in appellees, and that the appellants were not entitled to a prescriptive easement. We find no error and affirm.

On July 21, 2000, appellants filed a petition in Hempstead County to declare a prescriptive easement for a roadway that traversed the property of Clint and Dorothy Jones.[1] The Joneses denied appellants' claim and filed a counterclaim seeking to quiet title to certain lands, including that roadway. Appellants objected to venue, alleging that the disputed lands were actually located in

---

[1] Clinton D. Jones, or 'Clint Jones', is now deceased. David W. Jones, in his capacity as the personal representative of the estate of Clint Jones, is named as an appellee.

Miller County. However, the matter was tried in Hempstead County, and all parties agreed to be bound by a decision of that court. The trial judge found that the real property in dispute is located in Hempstead County, quieted the real property in the Joneses, and dismissed the requests for a prescriptive easement and a permanent restraining order.

Appellants first assert that the disputed land should not have been quieted in appellees. More specifically, appellants argue the following: the testimony of Hall (appellant's land surveyor) was admissible; the appellees failed to prove that the disputed lands were located in Hempstead County; and the appellants' claims of adverse possession and laches should have been sustained. However, all three arguments fail for reasons discussed below. In a quiet-title action, the moving party's burden is to establish the true ownership of the land in question. *Koonce v. Mitchell*, 341 Ark. 716, 19 S.W.3d 603 (2000). Appellees properly established clear title to the land and title was correctly quieted in them.

■ Appellants argued that the Red River, located between Hempstead County and Miller County, had shifted, causing all of appellants' land and the disputed lands to remain in Miller County. If the disputed lands proved to be in Miller County, appellants' possession and ownership would likely be easier to prove. Hall, appellants' expert witness, testified that the Red River experienced an avulsion, sometime around 1915. An "avulsion" occurs when a body of water suddenly shifts its course, as opposed to an "accretion," where a body of water gradually changes its course. Riparian landowners are not affected by an avulsion and the boundaries of their land do not change; however, with an accretion, the boundaries of the riparian land owners change with the course of the stream. *Goforth v. Wilson*, 208 Ark. 35, 184 S.W.2d 814 (1945). According to Hall, there were accretions prior to the avulsion that expanded the Miller County side of the river and diminished the Hempstead County side, a disadvantage for the appellees and their predecessors. However, the trial court determined that Hall's testimony was based upon mere speculation. In addition, the War Department Map that Hall used for a majority of his conclusions was determined to be hearsay. Evidentiary rulings are a matter of discretion. *Grant v. State*, 357 Ark. 91, 161 S.W.3d 785 (2004). In addition, this court does not attempt to weigh evidence or assess the credibility of witnesses, as that responsibility lies with the trier of fact. *Williams v. State*, 338 Ark. 178, 992 S.W.2d 89 (1999). We have repeatedly held that the trial court is in the superior position to determine the credibility

of the witnesses and the weight to be accorded to their testimony. *Cox v. Miller*, 363 Ark. 54, 210 S.W.3d 842 (2005). We find no abuse of discretion on the part of the trial court regarding Hall's testimony.

■ Appellants incorrectly concluded that appellee failed to prove that the disputed lands were located in Hempstead County. The only way in which this issue is relevant to the quiet-title action is to ensure appellee had been paying real property taxes on the disputed lands to the correct county, and it is clear that the property is located in Hempstead County. First, several maps offered as exhibits show that the disputed land is east of the Red River, in Hempstead County. Second, appellees' expert testified that the land is in Hempstead County. The trial court clearly found the appellees' surveyor's testimony more credible than Hall's. Again, the trial court is in the best position to determine the credibility of witnesses. *Id.* Furthermore, appellees presented all of the deeds in the chain of title, which were recorded in Hempstead County, and which conveyed real property located in Hempstead County to appellees and their predecessors. Appellees proved true ownership of the land, and proved that it was located in Hempstead County. This court will affirm a trial court's finding of fact unless the finding is clearly erroneous. *Tyson Foods, Inc. v. ConAgra, Inc.*, 349 Ark. 469, 79 S.W.3d 326 (2002). In the instant case, we do not find the trial court to be clearly erroneous. Therefore, we affirm the trial court's holding that the lands in dispute should be titled in appellees.

■■ Finally, appellants argue that title should not have been quieted in appellees because their claims of adverse possession and laches should have been sustained. Adverse possession is a type of affirmative defense that must be specifically pled. *Stolz v. Franklin*, 258 Ark. 999, 531 S.W.2d 1 (1975). After appellees filed a quiet-title action as a counterclaim, appellants never pled, nor specifically argued, adverse possession. Testimony given by Mr. Bobo on cross-examination further suggests that appellants were not arguing adverse possession, rather color of title. While some evidence and arguments offered by appellant *could* have been used to support an adverse possession argument, it is the conclusion of this court that the information was only introduced to support the appellants' argument pertaining to a prescriptive easement. Turning now to appellants' claim of laches, this court finds that the argument may not be reviewed in this appeal. The trial court's final judgment and order made no reference to a reservation of the affirmative defense of laches. This court will not consider laches on

appeal when the matter was not brought to the attention of the trial court for a ruling. *Britton v. Floyd*, 293 Ark. 397, 738 S.W.2d 408 (1987). The burden to obtain a ruling is with the movant, and issues left unresolved may not be relied upon on appeal as they are waived. *Id.*

We now turn to the second point on appeal: whether the trial court erred by holding that appellants were not entitled to a prescriptive easement in connection with the use of a road located on appellees' property. This issue was traditionally equitable. Cases of equity are reviewed *de novo*, and an appellate court will not reverse factual findings by the trial court unless they are clearly erroneous. *McAdams v. McAdams*, 353 Ark. 494, 109 S.W.3d 649 (2003). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Murphy v. City of West Memphis*, 352 Ark. 315, 1001 S.W.3d 221 (2003). This court has established the burden one faces when asserting his right to land by prescriptive easement:

> One asserting an easement by prescription must show by a preponderance of the evidence that one's use has been adverse to the true owner and under a claim of right for the statutory period. Some circumstance or act in addition to, or in connection with, the use which indicates that the use was not merely permissive is required to establish a right by prescription. Overt activity on the part of the user is necessary to make it clear to the owner of the property that an adverse use and claim are being exerted. Mere permissive use of an easement cannot ripen into an adverse claim without clear action placing the owner on notice.

*Manitowoc Remanufacturing, Inc. v. Vocque*, 307 Ark. 271, 819 S.W.2d 275 (1991) (citations omitted). In addition, this court has previously held that:

> [E]rection and maintenance of a gate or a wire gap across a road, by an owner, when his purpose is not merely to restrain livestock, constitutes notice to the public that, thereafter, any travel upon the road is by permission of the owner and not as a matter of right to the public or to any individual traveling the road, even though the gate or gap may be left open during certain seasons.

*Hoover v. Smith*, 248 Ark. 443, 451 S.W.2d 877 (1970).

■ Nothing in the record suggests that appellants conducted any activity on the land that would have put appellees on notice that their use was adverse. The testimony of Guy Bobo, one

of the appellants, demonstrates that, at one time, even he believed his use of the road was permissive, as he went to one of the appellees personally to ask for an easement on the property. In other testimony, appellees demonstrated how their predecessor simply allowed appellants to use the road in order to be "neighborly." Even appellants admitted that general public access to the lands had been prohibited. While there was conflicting testimony over which party maintained a gate across the road, there was sufficient testimony in the record for the court to find that appellees, as well as their tenant, had maintained a locked gate on the property for many years. There is nothing in the record that leaves this court with a strong conviction that appellants met their burden and that a mistake was made.

Affirmed.

Special Justice J. LEON JOHNSON, joins.

HANNAH, C.J., and IMBER, J., concur.

GUNTER, J., not participating.

JIM HANNAH, Chief Justice. I agree that this case should be affirmed; however, I set out my grounds separately. This case presents two issues to be decided by this court. The first issue is whether the circuit court erred in quieting title to disputed land in defendants and counter-complainants David W. Jones, the Estate of Clinton D. Jones, deceased, Dorothy Jones, A.G. Martin, Jr., and Clinton C. Jones (collectively referred to as "Jones"). The second issue is whether the circuit court erred in denying Guy and Nellie Bobo's petition for a declaration of a prescriptive right to use a roadway across Jones's land. As discussed below, the remaining issues raised by the Bobos are not subject to review on appeal.

## Standard of Review

At issue in the circuit court was an action for a prescriptive easement and an action to quiet title brought as a counterclaim. Both actions in this case are equitable.[1] As such, the circuit court's

---

[1] An action seeking declaration of a prescriptive easement is an equitable action. *Carson v. County of Drew*, 354 Ark. 621, 128 S.W.3d 423 (2003). Adjudication of statutory rights in quieting title is undertaken pursuant to principles of equity. Ark. Code Ann. § 18-60-504 (Repl. 2003).

decision on the easement is reviewed de novo on the record, and this court will not reverse a finding of fact by the circuit court unless it is clearly erroneous. *Id.* In reviewing a circuit court's findings on an equitable issue, this court gives due deference to the circuit court's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony. *Id.* Disputed facts and determinations of witness credibility are within the province of the fact-finder. *Id.* A finding is clearly erroneous, when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Owners Ass'n of Foxcroft Woods v. Foxglen,* 346 Ark. 354, 57 S.W.3d 187 (2001).

### Adverse Possession and Laches

The Bobos pled laches in their answer to the counterclaim. They did not plead adverse possession but did raise the issue at trial. No motion to conform to proof was made on the issue of adverse possession. They argue on appeal that the circuit court erred in refusing to rule in their favor based on adverse possession and laches, noting that adverse possession was presented to the circuit court and no objection was raised by Jones.

This case is before us on appeal. Our jurisdiction on appeal is limited to review of an order or decree of a lower court. *Gwin v. Daniels,* 357 Ark. 623, 184 S.W.3d 28 (2004). Because there is no ruling on the issue of adverse possession or the issue of laches, there is no order for this court to review on these issues. If the circuit court wrongfully refused to act, that would have been subject to petition for a writ by way of an original action in this court. *See, e.g., Smith v. Fox,* 358 Ark. 388, 193 S.W.3d 238 (2004).

### Quiet Title

As the first point on appeal, the Bobos argue that the circuit court erred in quieting title in the disputed land in Jones. By seeking to have title quieted, Jones bore the burden of proof to establish ownership of the disputed land. *Williams v. Campbell,* 254 Ark. 592, 495 S.W.2d 512 (1973). Under Ark. Code Ann. § 18-60-506 (Repl. 2003), a prima facie title is shown by proof of color of title and payment of taxes for more than seven years. Jones offered deeds showing he held title and proof of payment of taxes for more than fifty years in Hempstead County. The Bobos countered with their own deed, proof of payment of taxes in Miller County, and raised avulsion as a defense.

The disputed land lies near and has been affected by movement in the Red River. In 2000, James K. Cole was retained to survey Jones's property and found that under the description in the deed, the Bobos were encroaching on Jones's land. The metes and bounds description of the deed to Jones overlaps the metes and bounds description of a deed to the Bobos. The Bobos' deed shows the disputed land to be in Miller County, and Jones's deed shows it to be in Hempstead County.

The issue of just where the land boundary lies in this case depends on movement of the Red River and the issues of avulsion and accretion. The court of appeals in *White v. J.H. Hamlen & Son Co.*, 67 Ark. App. 390, 394-95, 1 S.W.3d 464, 466-67 (1999), summarized the law on riparian rights and accretion and avulsion:

> A riparian landowner is at the mercy of the river upon which his land is situated. He acquires, incident to his ownership, whatever land may be added by gradual and imperceptible accretion. *See Crow v. Johnston*, 209 Ark. 1053, 194 S.W.2d 193 (1946). At the same time, he assumes the risk of losing his property by its being gradually washed away by the waters of the river. *Id.* When a stream changes its course gradually, i.e., by accretion, the boundaries of the riparian land owners change with the stream. *Goforth v. Wilson*, 208 Ark. 35, 184 S.W.2d 814 (1945). When a stream shifts suddenly, i.e., by avulsion, the boundaries of the riparian landowners do not change with the stream. *Id.* The question of whether accretion or avulsion has occurred is generally one of fact.

When land boundaries are altered by the movement of a stream, there is a presumption that the movement occurs by gradual erosion and accretion rather than avulsion. *Pannell v. Earls*, 252 Ark. 385, 483 S.W.2d 440 (1972). Because they raised the issue, the Bobos bore the burden of proving that an avulsion took place. *Younts v. Crockett*, 238 Ark. 971, 385 S.W.2d 928 (1965). The Bobos had to show that a new channel was cut by sudden and perceptible change. *Wyatt v. Wycough*, 232 Ark. 760, 341 S.W.2d 18 (1960). Such a change must be perceptible while the process is ongoing. *Goforth v. Wilson*, 208 Ark. 35, 184 S.W.2d 814 (1945).

The 1874 act creating Miller County sets the relevant portion of the eastern boundary of the county at mid-channel of the Red River. Since then, the Red River has moved to the west. Once the river was the boundary of the disputed land. Under principle of avulsion, the Bobos prevail because the property lines remain where they were before the movement of the river. If the

movement was by accretion, the Joneses prevail because the property lines move with the river.

The Bobos assert that the circuit court erred in refusing to admit all the evidence to be offered by their expert Richard B. Hall. The circuit court found uncertainty in evidence of avulsion, or in other words, found that the Bobos did not meet their burden of proof. While the War Department Map uses the term "cut off" in showing a change in the flow of the Red River in 1915, there is no explanation on the map of what is meant by that term. It may well refer to avulsion, but it is not clear that it does, and even if it does refer to avulsion, it does not explain just where and to what extent there was an avulsion. Even considering the proffered evidence, I cannot say that I am left with a definite and firm conviction that a mistake has been committed in finding that title is to be quieted the Joneses. Under the standard of review the circuit court should be affirmed.

### Prescriptive Easement

In *Carson v. County of Drew*, 354 Ark. 621, 625, 128 S.W.3d 423, 425–26 (2003), this court recently set out the law on prescriptive easement:

> A prescriptive easement may be gained by one not in fee possession of the land by operation of law in a manner similar to adverse possession. *Owners Assoc. Of Foxcroft Woods, supra; See* Paul Jones Jr., Arkansas Titles to Real Property §§ 714, 1499, at 443, 906–09 (1935 & Supp. 1959); *Neyland v. Hunter*, 282 Ark. 323, 668 S.W.2d 530 (1984) ("Prescription is the acquisition of title to a property right which is neither tangible nor visible (incorporeal hereditament) by an adverse user as distinguished from the acquisition of title to the land itself (corporeal hereditament) by adverse possession."). Like adverse possession, "prescriptive easements . . . are not favored in the law, since they necessarily work corresponding losses or forfeitures in the rights of other persons." 25 AM. JUR. 2d Easements and Licenses § 45 (1996); *Potts v. Burnette*, 301 N.C. 663, 273 S.E.2d 285 (1981). In Arkansas, it is generally required that one asserting an easement by prescription show by a preponderance of the evidence that one's use has been adverse to the true owner and under a claim of right for the statutory period. *Manitowoc Remanufacturing, Inc. v. Vocque*, 307 Ark. 271, 819 S.W.2d 275 (1991); *Neyland v. Hunter, supra; Teague v. Raines*, 270 Ark. 412, 605 S.W.2d 485 (1980). This court has said that the statutory period of seven years for adverse possession applies to prescriptive

easements. *Neyland v. Hunter, supra; Duty v. Vinson,* 228 Ark. 617, 309 S.W.2d 318 (1958); *Brundidge v. O'Neal,* 213 Ark. 213, 210 S.W.2d 305 (1948). That statutory period for adverse possession is set out in Ark. Code Ann. § 18-61-101 (1987).

The Bobos bore the burden of showing by a preponderance of the evidence that there has been adverse, not permissive, use of the roadway. *Carson, supra.* The Bobos used the roadway since 1973, a period of nearly thirty years at the time the action was filed. However, during most of that time, the roadway has been gated and often locked. The roadway is not fenced, and stock on Jones's property is restrained by the gates on the roadway. The Bobos have been given keys at times. They have even replaced the gate once. However, while use for nearly thirty years weighs heavily in favor of finding a prescriptive easement, there was also evidence that both the Bobos and the public's access to the roadway has been limited and controlled by the Joneses over all these years. I cannot say that I am left with a definite and firm conviction that a mistake has been committed in finding that the Bobos' use of the roadway was permissive. Therefore, the circuit court should be affirmed on this issue.

IMBER, J., joins.